# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>ONE RESIDENCE UNDER RULE 41 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 23-sw-434

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, herein incorporated by reference.

located in the ____Jurisdiction of the____ District of _____Columbia_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, herein incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C), 21 U.S.C. § 846, 31 U.S.C. § 5324, 18 U.S.C. § 1956, 18 U.S.C. § 1957, 18 U.S.C. § 545 | Possession with Intent to Distribute a Detectable Amount of Fentanyl and Cocaine, and Conspiracy Thereof; Structuring Transactions to Evade Reporting Requirements; Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; Smuggling Goods into the United States |

The application is based on these facts:

See Attached Affidavit in support of Search Warrant, which is herein incorporated by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brett Lembke, Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: ____12/13/2023____

*Judge's signature*

City and state: __Washington, D.C.__

G. Michael Harvey, United States Magistrate Judge

*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means     ❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>ONE RESIDENCE UNDER RULE 41 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  23-sw-434

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Jurisdiction of the_____ District of _____Columbia_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, herein incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, herein incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____December 27, 2023_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____G. Michael Harvey_____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:     _____12/13/2023_____            _____
                                                                                             *Judge's signature*

City and state:          _____Washington, D.C._____        G. Michael Harvey, United States Magistrate Judge
                                                                                     *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  23-sw-434 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to be Searched:  TARGET PREMISES

The premises (depicted below) and all parts therein, including all rooms, located at **4 I Street Southeast, Apartment 204, WASHINGTON D.C. 20003 ("TARGET PREMISES")**. The **TARGET PREMISES** is an apartment located on the second floor of the east building of the Novel South Capitol Apartment Complex, address 2 I Street Southeast, Washington D.C. The **TARGET PREMISES** is the southwestern-most located unit on the second floor of the east building, is located at the end of a hallway, and is directly across from a staircase. There is a separate apartment 204 within this apartment complex, however that unit is located in the west building. For clarity, if standing on I Street Southeast and looking straight ahead/north towards the apartment complex, the windows for the **TARGET PREMISES** are visible and facing I Street Southeast, as shown below. A plate bearing the numbers "204" is visible to the left of the **TARGET PREMISE's** door.



1

**ATTACHMENT B**

**DESCRIPTION OF PROPERTY TO BE SEARCHED AND SEIZED**

1.      The items to be searched and seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C) (Possession with Intent to Distribute a Detectable Amount of Fentanyl and Cocaine), 21 U.S.C. § 846 (Conspiracy Thereof), 31 U.S.C. § 5324 (Structuring Transactions to Evade Reporting Requirements), 18 U.S.C. § 1956 (Laundering of Monetary Instruments); 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity); and 18 U.S.C. § 545 – (Smuggling Goods into the United States) (collectively, the "TARGET OFFENSES") by Kahlil **FELDER** ("the Subject") and other identified and unidentified persons, as described in the search warrant affidavit, including, but not limited to:

    a.   Evidence of the TARGET OFFENSES, including but not limited to:

    b.   Evidence of any conspiracy, planning, or preparation to commit those offenses;

    c.   Evidence concerning efforts after the fact to conceal evidence of those offenses, or to flee prosecution for the same;

    d.   Evidence concerning materials, devices, or tools that were used to unlawfully commit the TARGET OFFENSES;

    e.   Evidence of the state of mind of the subject and/or other co-conspirators, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation; and

2

    f.   Evidence concerning the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the unlawful actors about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

2.    Drugs and drug paraphernalia, and items used in the sale, transfer, transportation, packaging of illegal narcotics substances, and also including scales, butcher paper, boots, plastic wrap, plastic bags, tape, cigarette papers, pipes, hypodermic needles and syringes, written articles on the use and effects of narcotics, diluents and cutting agents, which may be evidence of the TARGET OFFENSES.

3.    Weapons, including but not limited to revolvers, semi-automatic pistols, rifles and ammunition, ammunition, magazines, bulletproof vests, and firearms-related paraphernalia including, but not limited to, gun-cleaning kits, gunsights, holsters, receipts and documentation for the purchased of same, and related firearm paraphernalia, which may be tools for the commission of the TARGET OFFENSES.

4.    Documents related to or memorializing the ordering, purchasing, storage, transportation and sale of controlled substances, including U.S. currency used in the purchase and sale of controlled substances, buyer lists, seller lists, pay-owe sheets and records of sales, log books, drug ledgers, personal telephone/address books of customers and suppliers, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental

records, which may be evidence of the TARGET OFFENSES, proceeds of the TARGET OFFENSES, or may contain evidence of the TARGET OFFENSES.

5.      Books, records, receipts, notes and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances, which may be evidence of the TARGET OFFENSES.

6.      Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers, which constitute evidence of customers, distributors, conspirators, and potential witnesses of violations of the TARGET OFFENSES.

7.      Books, records, receipts, bank statements, money drafts, letters of credit, money orders and cashier's checks, passbooks, bank checks, safe deposit box keys, and any other items evidencing the obtaining, secreting, transfer, concealment, storage and/or expenditure of money, which constitute records and proceeds of the TARGET OFFENSES.

8.      United States currency, precious metals, jewelry and financial instruments, stocks and bonds, which constitute proceeds of the TARGET OFFENSES.

9.      Photographs, in particular photographs of co-conspirators, assets, and controlled substances, which constitute evidence of the TARGET OFFENSES.

10.     Evidence of relationships between Kahlil **FELDER** and/or other suspected co-conspirators identified during the execution of this search warrant, and other members of the drug trafficking organization, including evidence of identification and evidence of motivation to engage in narcotics trafficking.

11.     Safes (both combination and key type) and/or other locked containers and their contents, which can contain evidence of the commission of the TARGET OFFENSES or proceeds

from the commission of the TARGET OFFENSES.

12.     Indicia of ownership, including, receipts, invoices, bills, canceled envelopes, and keys, which provides evidence of identity as to individuals committing the TARGET OFFENSES.

13.     Financial records and articles of personal property evidencing or containing the evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of money and assets derived from or to be used in the sale of controlled substances, including books, receipts, records, bank statements and records, business records, money drafts, money orders, wire transfer receipts, and cashier's check receipts, passbooks, bank checks, safes, records of safety deposit boxes and storage lockers that would constitute evidence of the TARGET OFFENSES.

14.     Digital devices used in the commission of, or to facilitate, violations of the TARGET OFFENSES, including cellular telephones, SIM cards, computers, laptops, I-Pads, DVDs, hard drives, and electronic storage devices, and receipts reflecting their ownership and use, which contain records of the commission of the TARGET OFFENSES.

15.     For any digital device which is capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities as described in the search warrant affidavit and above, hereinafter the "Device(s)":

    a.  Evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

    b.  Evidence of software, or the lack thereof, that would allow others to control the

5

Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  Evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic storage;

d.  Evidence of the use of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

e.  Evidence of the number of times the Device(s) was used;

f.  Passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

g.  Documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

h.  Records of or information about Internet Protocol addresses used by the Device(s); and

i.  Records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

j.  Records and information relating to the TARGET OFFENSES.

k.  Records and information relating to the identity of accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling and distribution of fentanyl, cocaine, or

some other controlled substance.

l.  Records and information relating to the identity of co-conspirators, criminal associates, or others involved in smuggling fentanyl, cocaine, or some other controlled substance.

m.  Records and information relating to travel to or presence at locations involved in the smuggling and distribution of fentanyl, cocaine, or some other controlled substance, such as stash houses, load houses, or delivery points.

n.  Records and information identifying the user of, or persons with control over or access to, the subject telephone; and/or:

o.  Records and information that place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

p.  Evidence of relationships between the subjects and/or other suspected violators identified during the execution of this search warrant, and other members of the drug trafficking organization, including evidence of identification and evidence of motivation to engage in narcotics importation and trafficking.

16.  During the execution of the search of the **TARGET PREMISES** described in Attachments A, law enforcement personnel are also specifically authorized to obtain from the subjects the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock any Device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that the aforementioned person(s)' physical biometric

characteristics will unlock the Device(s), to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition of:

> (a) any of the Device(s) found at the **TARGET PREMISES**,
>
> (b) where the Device(s) are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments,

for the purpose of attempting to unlock the Device(s)'s security features in order to search the contents as authorized by this warrant.  While attempting to unlock the device by use of the compelled display of biometric characteristics pursuant to this warrant, law enforcement is not authorized to demand that the aforementioned person(s) state or otherwise provide the password or identify the specific biometric characteristics (including the unique finger(s) or other physical features), that may be used to unlock or access the Device(s). Nor does the warrant authorize law enforcement to use the fact that the warrant allows law enforcement to obtain the display of any biometric characteristics to compel the aforementioned person(s) to state or otherwise provide that information.  However, the voluntary disclosure of such information by the aforementioned person(s) is permitted. To avoid confusion on that point, if agents in executing the warrant ask any of the aforementioned person(s) for the password to any Device(s), or to identify which biometric characteristic (including the unique finger(s) or other physical features) unlocks any Device(s), the agents will not state or otherwise imply that the warrant requires the person to provide such information, and will make clear that providing any such information is voluntary and that the person is free to refuse the request.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "digital devices" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop computers, laptop computers, notebooks, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, USB flash drives, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); security devices; and any other type of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions.

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF ONE RESIDENCE UNDER RULE 41** | **SW No. 23-sw-434** <br><br> **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Brett Lembke, a Special Agent of the Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, declare and state:

### INTRODUCTION AND AGENT BACKGROUND

1.      This affidavit is made in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for **4 I Street Southeast, Apartment 204, WASHINGTON D.C. 20003 ("TARGET PREMISES")** as further described in Attachment A for the items described in Attachment B, which are expected to constitute evidence of a criminal conspiracy to unlawfully and intentionally commit violations of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C) (Possession with Intent to Distribute a Detectable Amount of Fentanyl and Cocaine), 21 U.S.C. § 846 (Conspiracy Thereof), 31 U.S.C. § 5324 (Structuring Transactions to Evade Reporting Requirements), 18 U.S.C. § 1956 (Laundering of Monetary Instruments); 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity); and 18 U.S.C. § 545 – (Smuggling Goods into the United States) (collectively, the "TARGET OFFENSES"). It is further alleged that the facts contained herein establish probable cause for the issuance of a search and seizure warrant for the **TARGET PREMISES**.

2.      I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7).  As such, I am empowered to conduct investigations of, and to make

10

arrests for offenses enumerated in 18 U.S.C. § 2516. I am cross-designated and have the authority to conduct narcotics trafficking investigations and enforcement activities pursuant to Title 21 of the United States Code.

3.    I am a Special Agent with HSI and have been employed since July of 2021. I have attended and graduated the Federal Law Enforcement Training Centers' (FLETC) Criminal Investigator Training Program (CITP), as well as the HSI Special Agent Training (HSISAT) academy. I am currently assigned to the Washington/Baltimore High Intensity Drug Trafficking Area (HIDTA) group, where my duties and responsibilities include the investigation of federal narcotics offenses. Based on my training and experience, I am familiar with the conduct of narcotics investigations, recognition of controlled substances, and the measures taken by criminal groups to conceal, smuggle, transport, and distribute such controlled substances. In my experience investigating narcotics offenses, I am familiar with investigative techniques including but not limited to, the execution of search warrants; analysis of cell-site locational data; physical surveillance; the use of cooperating sources; use of pen registers and trap and trace devices; the use of a Title III intercept for wire, oral, and electronic communications; mail covers; forensic examination of digital media and electronic devices; telephone call detail record analysis; examination and recognition of travel patterns consistent with drug trafficking; and the analysis of financial documents for indicators of narcotics-related money laundering. I have assisted with Title III wiretap investigations and have assisted on investigations resulting in the seizure of multi-kilogram quantities of narcotics, firearms, and other contraband and proceeds of drug trafficking.

4.    The basis of my opinions and conclusions, which I drew from the facts set forth herein, are established as a result of my training and experience, and my conversations with other federal

agents and local law enforcement officers familiar with narcotics smuggling. The dates and times outlined below are approximate.

5.      Except as otherwise noted, information set forth in this affidavit has either been observed or provided to me by HSI special agents or other multi-agency federal, state, and local officers with whom I have spoken, who were involved in this investigation, or whose reports I have read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

6.      Because this affidavit is being submitted for the limited purpose of seeking the search warrants specified below, I have not set forth every fact learned during the course of this investigation. Rather, I have set forth only the facts that I believe are necessary to establish the legal foundation for an order authorizing the requested warrants.

7.      Based on my training and experience in narcotics investigations, I know the following:

a.      Drug traffickers often use phone numbers disassociated with their own names or other personal identifiers in order to evade detection by law enforcement.  Drug traffickers will frequently maintain multiple cellular telephones and multiple Subscriber Identity Module (SIM) cards, allowing them to use multiple phone numbers across a range of available devices.  Additionally, drug traffickers often have separate phone numbers for separate aspects of their lives, to include specific devices and telephone numbers dedicated to their illegal drug trafficking activities, and specific devices and telephone numbers dedicated to non-criminal activities, such as communication with family and friends ("clean" phones and "dirty" phones).  Drug traffickers are also known to stop using ("dump") devices and phone numbers dedicated to drug trafficking activities after a certain amount of time has

12

passed and/or in response to law enforcement activities or perceived suspicions as an operational security measure.  Drug traffickers may sometimes carry and use "clean phones" for longer periods of time than they would carry and use a "dirty phone."

b.   Individuals who deal in illegal controlled substances commonly maintain narcotics; items used to store, process, and distribute narcotics; and books, records, receipts, notes, ledgers, bank records, money orders and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled substances.  These items are often maintained where the dealers in illegal controlled substances have ready access to them, such as in secured locations within their residence, the residences of friends, family members, and associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.  It is common that such records are maintained by traffickers on computers, cellular telephones, personal tablets, laptop computers, and other personal electronic devices.

c.   It is common for individuals who deal in the sale and distribution of illegal controlled substances to possess contraband related to the activity (such as scales, razors, packaging materials, and cutting agents) at their residences, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

d.   Individuals involved in narcotics trafficking often own, possess, and/or use weapons (to include firearms) as a means to facilitate their illegal drug trafficking activities.  Such weapons are most often stored in their residence, or the residences of friends, family members, or associates, or in the places of operation of the drug distribution activity, such as a stash house or safe house.

e.   Drug traffickers often maintain large quantities of cash at their residences, or other residences or stash houses associated with their drug distribution activities.  Drug dealers are also often

in involved in money laundering, and evidence of such money laundering can often be found in their residences (to include within their digital media devices) in the form of documents depicting money order purchases and payments, electronic money transfers to and from financial accounts accessible by them, receipts for Automated Teller Machine (ATM) cash deposits, and other documents.

f.   Drug trafficking at the retail level is largely a cash business.  I know that drug traffickers often generate large amounts of unexplained wealth, and through financial transactions, attempt to conceal, disguise or legitimize unlawful proceeds through domestic and international banks and their attendant services, securities brokers, professionals, such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency.  In addition, drug traffickers often use drug proceeds to purchase additional narcotics to perpetuate and promote the ongoing conspiracy.  I know that drug traffickers often use cellular telephones to communicate with co-conspirators in furtherance of their money laundering activities.

## JURISDICTION

9.     This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C.  *See* 18 U.S.C. § 3237.

## PROBABLE CAUSE

10.    From December 2022 to the present, HSI has been conducting a joint investigation with

14

the Washington D.C. Metropolitan Police Department (MPD) and the U.S. Postal Inspection Service (USPIS) into Kahlil Gibran **FELDER** ("**FELDER**") and his role in the commission of the TARGET OFFENSES. The investigation has revealed that from at least January 1, 2021, to the present, **FELDER** has participated in a conspiracy to violate the TARGET OFFENSES, which has involved the distribution of fentanyl as well as the laundering of over one 1.2 million dollars in suspected drug proceeds. The current investigation began following a controlled purchase of fentanyl from **FELDER** in late October 2022 by an undercover (UC) officer of the Washington D.C. Metropolitan Police Department (MPD).

11.     On December 13, 2023, HSI special agents executed a delayed notice search warrant (23-SW-421) on the **TARGET PREMISES** while **FELDER** was away from the residence. The delayed notice search warrant enabled agents to search the entirety of the **TARGET PREMISES**, but only permitted agents to seize items and contraband specifically stated in the warrant, whereas for any other non-specified items, agents could only search, photograph, and otherwise document[1]. Your affiant incorporates the referenced search warrant herein by reference.  During a search of the **TARGET PREMISES**, law enforcement officers discovered two firearms and $4,000.00 of US currency in **FELDER's** nightstand next to **FELDER's** bed. Additionally, agents discovered 9 loose rounds of .40 caliber ammunition in the coffee table drawer located in the living room. The firearms included a Glock 36, .45 caliber firearm bearing serial number EVW994 and a Springfield Hellcat 9mm pistol bearing serial number BA103522. Your affiant knows that no firearms manufacturers or ammunition manufacturers are located in the District of Columbia. The Glock 36 bearing serial number EVW994 was reported to be a stolen firearm out of Prince George's County, Maryland.

---

[1] Please reference U.S. District Court for the District of Columbia search warrant case number 23-SW-421.

Additionally, your affiant knows **FELDER** is a prior convicted felon having previously been convicted of an offense with a maximum term of imprisonment exceeding one year.

12.     Due to the potential threat posed to the community by **FELDER** due to law enforcement's discovery of two firearms in his bedside table, as well as your affiant's knowledge of the scope of **FELDER's** suspected criminal activities, investigators determined it necessary to seize the firearms and conduct a probable cause arrest of **FELDER** upon his return home. At this point, investigators determined that the need to seize the firearms and arrest **FELDER** outweighed any further need to maintain the covert nature of the investigation and the search warrant.   At approximately 4:50 PM, **FELDER** returned to the **TARGET PREMISES** and law enforcement arrested him in the apartment complex parking garage.

13. Following a mirandized interview of **FELDER** where **FELDER** did not make any substantive statements, law enforcement continued to search the **TARGET PREMISES** within the scope of the original search warrant. During the continued search, law enforcement found a suitcase in the apartment's entryway near the front door which contained distribution quantities of various types of suspected narcotics, to include several Ziploc bags containing an estimated hundreds (possibly thousands) of small baggies or "zips" containing suspected fentanyl. In total, investigators discovered over 1,000 grams (gross weight, including outer packaging) of a substance suspected to be fentanyl powder, a portion of which field tested presumptive positive for fentanyl through the use of a BTNX Rapid Response fentanyl test kit.  Law enforcement also discovered kilogram quantities of suspected cocaine and heroin within the same suitcase (pending field testing and gross weights, as of the time of this affidavit), hundreds (estimated, possibly thousands) of empty fentanyl baggies, and a digital scale.

14.     Agents are currently holding the house, and accordingly your affiant is requesting to

search the house after standard search warrant hours (after 10 pm), based upon the good cause articulated above. Based upon the above detailed facts and circumstances, your affiant now seeks authorization to conduct a full search and subsequent seizure of all items within the **TARGET PREMISES** that constitute evidence, fruits and instrumentalities of the TARGET OFFENSES, to include those non-contraband items which were not authorized for seizure in search warrant 23-SW-421.

## **CONCLUSION**

15. Based upon the aforementioned facts, your affiant believes that probable cause exists that the **TARGET OFFENSES** have occurred, are currently occurring, and will continue to occur, and that fruits, evidence, and instrumentalities of those criminal violations will be found during the search of the listed **TARGET PREMISES**. Accordingly, your affiant respectfully requests that the Court issue the requested search warrants for the items described in Attachment B.

17

16.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____

Brett Lembke
Special Agent
Homeland Security Investigations

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on December 13, 2023.


_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

18